IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:23-cr-00006 |
| | ) | |
| v. | ) | |
| | ) | **UNITED STATES' SENTENCING** |
| (1) RICHARD BRASSER | ) | **MEMORANDUM** |
| | ) | |
| (2) GREGORY GENTNER | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby submits this sentencing memorandum as to both Defendant Richard Brasser and Defendant Gregory Gentner. The Defendants' repetitive and deliberate violation of their federal payroll tax obligations served to unjustly enrich themselves and their company and deprived the Federal Government of funds used to provide important retirement and disability benefits to employees. The total employment taxes due and owing for the third quarter of 2014, all four quarters of 2015 and 2016, and the first two quarters of 2017 was $1,183,576.99. Their conduct warrants a significant term of imprisonment to promote specific and general deterrence, "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

I. **BACKGROUND**

Following a five-day trial, on March 12, 2024, Brasser and Gentner were found guilty of Counts 1 through 5 of the Indictment – willfully failing to account for and pay over trust fund taxes, in violation of 26 U.S.C. § 7202.[1] The Presentence Report ("PSR") fully incorporates the Statement of Relevant Conduct, which the United States does not repeat here. Presentence Reports

---

[1] Brasser and Gentner were each acquitted of two counts of filing false tax returns, in violation of 26 USC § 7206(1), and Brasser was acquitted of one count of evasion of payment, in violation of 26 USC § 7201.

1

("PSR") (Doc. 97 – Brasser's PSR at ¶¶ 6-60 and Doc. 99 – Gentner's PSR at ¶¶ 6-60). Brasser and Gentner both admitted they were the "responsible persons" for collecting trust fund taxes, accounting for employment taxes by filing Forms 941 with the Internal Revenue Service ("IRS"), and paying over those taxes to the IRS. Their defense was "we'd pay it one day and we did." However, if every taxpayer took that position, no taxes would ever be remitted.

Talk is cheap. Actions speak. Brasser and Gentner's words spoken to the IRS between 2013 and 2017 had little value because they either falsely stated they could not pay or because they never followed through with what they said they would do, primarily get into and stay in compliance. Instead, from that time forward, Brasser and Gentner were never fully compliant with rFactr's employment tax obligations, and despite civil collection efforts by the IRS, it was not until the midst of a criminal investigation that they fully paid the trust fund portion of the employment taxes owed by their company.

Contrary to the narrative peddled by the Defendants, this was not a situation where Brasser and Gentner came forward to the IRS to inform it of something it did not know. On June 16, 2016, Gentner called the IRS. During this call, it was the IRS that informed Gentner that it was missing Forms 941 and tax payments for the third quarter of 2014, all four quarters of 2015, and the first two quarters of 2016. The IRS warned Gentner of the potential for enforcement action, including a levy or a lien, an action Gentner, Brasser, and rFactr had already experienced. On June 18, 2016, prior to the submission of the Voluntary Disclosure, the IRS initiated a new collection action concerning rFactr's failure to file Forms 941 and failure to pay the employment taxes for all four quarters of 2015 and the first quarter of 2016.

On June 30, 2016, rFactr filed a Voluntary Disclosure Application with the IRS. The Application covered the quarters the IRS told Gentner they were missing; they did not "disclose"

anything the IRS did not already know. The Application represented that rFactr was "moving its payroll process to an outside vendor in July 2016. This will ensure continued compliance and payment from a payroll perspective going forward." This never happened.

On August 11, 2016, rFactr received a pre-clearance letter from the Voluntary Disclosure Program stating that they were precleared to make a Domestic Voluntary Disclosure. On August 24, 2016, RO Wallis notified rFactr, through its representative, that rFactr needed to ensure they "continued to maintain compliance with their Federal Tax Deposit requirement," an admonition that Brasser and Gentner utterly disregarded. On November 15, 2016, Brasser and Gentner received a letter from the IRS informing them that their domestic voluntary disclosure was received and was "preliminarily accepted as meeting the timeliness requirements." The letter stated that a "domestic voluntary disclosure will not automatically guarantee immunity from prosecution; however, a domestic voluntary disclosure may result in prosecution not being recommended." The letter further stated that "[a]cceptance of your domestic voluntary disclosure will also depend upon whether it is truthful and complete and whether you cooperate with the IRS in determining the correct tax liability and make good faith arrangements with the IRS to pay in full the tax, interest, and penalties determined by the IRS to be applicable." *See United States v. Tenzer*, 213 F.3d 34, 42 (2d. Cir. 2000) ("the voluntary disclosure policy is not satisfied by 'mere offers to make payments.'").

On June 19, 2017, Revenue Officer Carter, who was assigned to collect the unpaid taxes, spoke with rFactr's representative who stated that rFactr was not able to full pay and that he was unaware that rFactr was not making current deposits. That same day, Brasser and Gentner met with RO Carter. During this meeting, RO Carter informed Brasser and Gentner about the filing of the federal tax lien and the Trust Fund Recovery Penalty ("TFRP"). When Gentner asked about

3

the voluntary disclosure program, RO Carter explained again that in the domestic voluntary disclosure program all outstanding taxes had to be paid, and that the business was required to file all delinquent and current tax returns. Gentner stated that the business was unable to full pay.

On June 20, 2017, Gentner emailed Brasser with notes from their June 19 meeting with RO Carter. In this email, Gentner stated "We have to come up with an explanation" for why we got behind. He further noted that RO Carter reminded them multiple times that the "biggest thing is to stay current and make our current deposits."

On January 29, 2018, rFactr's representative told RO Carter that rFactr had closed and that there was no payroll. Because of these representations, the IRS informed rFactr that "the proposed levy action is no longer appropriate since you are out of business and have no distrainable assets from which to collect." The Appeals Officer recommended that "your Collection Due Process balances be reported as uncollectible as an out of business corporation."

However, despite telling RO Carter and the IRS that rFactr was out of business, Brasser and Gentner subsequently opened a new rFactr bank account at SunTrust (bank account x8770), which they did not disclose this account to the IRS. Moreover, between April 2018 and September 2019, rFactr received more than $189,000. None of these funds were used to pay off the outstanding tax liability. Instead, these funds were used by Brasser and Gentner for rFactr operating expenses, to pay outstanding payroll to employees, to make multiple credit card payments, and for cash withdrawals.

Strikingly, between 2015 and 2017, rFactr had almost $5 million in deposits to their bank accounts, derived primarily from receivables and investor funds. During their multi-year collection activity, rFactr owed $862,906.73 in employment taxes. rFactr had more than sufficient funds to pay the taxes, four-times over. During the collection actions and voluntary disclosure Brasser and

Gentner falsely told the IRS that rFactr did not have available funds when the reality was that they simply chose not to pay the IRS, instead paying themselves more than $900,000 in wages in 2015 and 2016, and paying for other rFactr expenses. This was a willful choice – to steal their employees' taxes to enrich themselves and their company.

| Tax Quarter | Income Tax Withheld | Total Social Security and Medicare Tax | Trust Fund Portion of Social Security and Medicare Tax | Deposits | Total Taxes Due | 4500 total deposits in quarter (net of deposits from 9851 and 4068) | 9851 total deposits in quarter | Exhibit |
|---|---|---|---|---|---|---|---|---|
| 1Q2015 | $51,653 | $53,160.88 | $26,580.44 | $0 | $104,813.88 | $220,682.40 | $242,500.29 | GX 52, 277 |
| 2Q2015 | $60,369 | $56,073.48 | $28,036.74 | $0 | $116,442.52 | $201,278.59 | $410,011.44 | GX 53, 277 |
| 3Q2015 | $52,261 | $34,731.27 | $17,365.63 | $0 | $86,992.24 | $96,487.13 | $351,800.55 | GX 54, 277 |
| 4Q2015 | $51,810 | $32,504.12 | $16,252.06 | $0 | $84,314.10 | $171,439.00 | $130,015.25 | GX 55, 277 |
| Total 2015 | $216,093 | $176,469.75 | $88,234.87 | $0 | $392,562.74 | $833,567.52 | $1,134,327.53 | |
| 1Q2016 | $58,302 | $53,693.06 | $26,846.53 | $0 | $111,995.04 | $130,370.62 | $460,000.95 | GX 56, 277 |
| 2Q2016 | $44,884 | $37,639.09 | $18,819.54 | $0 | $82,523.12 | $127,287.51 | $395,050.71 | GX 57, 277 |
| 3Q2016 | $43,132 | $24,135.26 | $12,067.63 | $27,959.94 | $67,267.23 | $185,817.45 | $215,000.29 | GX 58, 277 |
| 4Q2016 | $37,106 | $13,954.48 | $6,977.24 | $0 | $51,060.48 | $222,338.49 | $65,000.10 | GX 59, 277 |
| Total 2016 | $183,424 | $129,421.89 | $64,710.94 | $27,960 | $312,845.87 | $665,814.07 | $1,135,052.05 | |
| 1Q2017 | $37,014 | $34,127.72 | $17,063.86 | $0 | $71,141.72 | $506,898.10 | $115,000.28 | GX 60, 277 |
| 2Q2017 | $27,731 | $27,854.60 | $13,927.30 | $0 | $55,585.60 | $187,426.09 | $125,000.22 | GX 61, 277 |
| 3Q2017 | $12,608 | $13,357.50 | $6,678.75 | $31,922.82 | $25,965.46 | $163,774.97 | $2,597.80 | GX 62, 277 |
| 4Q2017 | $2,142 | $2,663.31 | $1,331.65 | $0 | $4,805.34 | $86,131.40 | $17,450.05 | GX 63, 277 |
| Total 2017 | $79,495 | $78,003.13 | $39,001.56 | $31,923 | $157,498.12 | $944,230.56 | $260,048.35 | |
| Total 2015-2017 | $479,012 | $383,894.77 | $191,947.37 | $59,882.76 | $862,906.73 | $2,443,612.15 | $2,529,427.93 | |
| | | | | | | | $4,973,040.08 | |

On September 22, 2021, Brasser and Gentner paid $558,010.65 to satisfy the TFRP. Prior to that date, the United States Attorney's Office had scheduled reverse proffers with Brasser and Gentner for September 23, 2021, where the United States informed them of potential criminal charges expected in an indictment. Both Brasser and Gentner attended. At Brasser's reverse proffer, Brasser's former counsel informed the United States of the payoff and questioned whether the government prosecuted people who have paid off the tax.

The Defendants only paid the Trust Fund Recovery Penalty, the taxes that were assessed against them individually. However, rFactr as a corporation owed and was assessed the employer portion of the employment taxes, which to date, remains unpaid. In total, for 2014 through 2017, the total balance due for rFactr's matching portion of the FICA taxes, including interest and penalties is more than is $880,000.

5

## II. ADVISORY GUIDELINES

The PSR computed the final offense level as 18. Doc. 97 at ¶¶ 67-75 and Doc. 99 at ¶¶ 68-76. With a Criminal History Category of I, the Guideline imprisonment range is 27 to 33 months. Doc. 97 at ¶ 107 and Doc. 99 at ¶ 103.

The United States submits that the intended tax loss, including relevant conduct is more than $550,000 and less than $1.5 million. Pursuant to U.S.S.G. §2T4.1(H), this results in an offense Level 20. "The tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." U.S.S.G. § 2T1.1(c)(5). Furthermore, the Sentencing Guidelines clearly contemplate that the tax loss is the amount of loss that the defendant intended to inflict, not the Government's actual loss. *See United States v. Boyer*, 1998 WL 830677 *2 (4th Cir. 1998); *United States v. Kraig*, 99 F.3d 1361, 1370-71 (6th Cir.1996).

Both Defendant Brasser and Defendant Gentner objected to the calculation of the intended tax loss and argued that it should be limited to the loss just for the counts of conviction. Pursuant to U.S.S.G. §1B1.3, the Court "shall" determine the base offense level on the basis of all relevant conduct attributable to the defendant." *United States v. Baucom*, 486 F.3d 822, 829 (4th Cir. 2007). Conduct is part of the "same course of conduct" or a "common scheme or plan"—and must be considered as relevant conduct—if it is "substantially connected to [the offense of conviction] by at least one common factor, such as common victims ... common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n. 9; *United States v. Jin Ho Kim*, 856 F.Supp.2d 714, 716 (D. Md. April 19, 2012).

Moreover, U.S.S.G § 2T1.1, Application Note 2 states "[i]n determining the total tax loss attributable to the offense (*see* § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme unless the evidence

6

demonstrates that the conduct is clearly unrelated." *See also* U.S.S.G. § 2T1.6 app note, Background ("Where no effort is made to defraud the employee, the offense is a form of tax evasion, and is treated as such in the Guidelines."). The Application Note continues with specific examples of conduct that are part of the same course of conduct or common scheme or plan which are directly applicable here, including "(A) there is a continuing pattern of violations of the tax laws by the defendant…(C) the violations involve the same or a related series of transactions." *Id*.; *see United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir. 1992).

In addition to the tax loss for the counts of conviction, the evidence at trial proved by a preponderance of the evidence that the Defendants willfully failed to pay over taxes withheld from the employees of rFactr for the other quarters in 2014, 2015, 2016, and 2017. Employers are required to "match" a portion of the Social Security and Medicare taxes withheld from employees' wages. For all the quarters in which the Defendants failed to pay over withheld taxes, the Defendants also failed to pay the matching employment taxes due to the IRS.

Brasser and Gentner were found guilty of failing to willfully account for and pay over the trust fund taxes for rFactr. Under §1B1.3, their offense level includes other conduct that was part of the same course of conduct as the offense of conviction. Brasser and Gentner engaged in a pattern of failing to pay over the trust fund taxes but also failed to pay the employer share of the taxes as part of the same scheme. The unpaid employment taxes, both employer and employee portions, are reported on the same Forms 941 and paid via the same electronic payment system.

Brasser and Gentner chose not to pay any of the employment taxes knowing it was illegal. They did not distinguish between the employer and employee portion. A plain reading of the guidelines reflects Brasser and Gentner's relevant conduct includes the full tax loss in this case of more than $1 million. *See, e.g., United States v. Fecondo*, No. CR 22-00011, 2023 WLW

7

7646494, at *3 (E.D. Pa. Nov. 14, 2023) (including employer contribution as relevant conduct under § 1B1.3); *United States v. Weaver*, No. 4:21-cr-3112, 2022 U.S. Dist. LEXIS 214862, at *4 (D. Neb. Nov. 28, 2022) ("There is nothing to negate the showing that the defendant's conduct included both the failure to pay employee and employer payroll taxes. The defendant, quarter after quarter and in the same course of conduct, failed to pay over both employer and employee shares of payroll taxes owed to the IRS."); *United States v. Shibilski*, 103 F.4th 1311, 1317 (7 th Cir. 2024) (affirming the denial of acceptance of responsibility adjustment because the defendant contested the tax loss from his 7202 conviction – a tax loss which included the employer's share of payroll taxes.).

Defendant Gentner objects to paragraph 40. However, the evidence supports this statement and RO Carter testified about this interaction at trial. Specifically, in government exhibit 71, RO Carter, in a meeting on June 19, 2017, with both Gentner and Brasser said the following:

> Mr. Gentner asked about the domestic voluntary disclosure program. I explained to Mr. Gentner and to Mr. Brasser that the domestic voluntary disclosure program was a program worked by the criminal division. I explained I was on the civil side and any questions about the voluntary disclosure program would have to be answered by CID. I did explain that even with the domestic voluntary disclosure program the taxes had to be paid. I also explained the business must get current and stay current. I discussed compliance at length and went over FTD's, deposit rules etc.

Both Defendants claim they should receive acceptance of responsibility. That reduction is not warranted. A reduction for acceptance of responsibility typically applies when a defendant pleads guilty and eases the burden of the government from going through trial. "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. *United States v. Jones*, 431 F.Supp.2d 594, 596 (E.D.V.A. May 1, 2006) *citing* U.S.S.G. §3E1.1, cmt. n.2. The Defendants went to trial, and while they admitted they did not file or pay, their defense was wholly centered on whether they acted willfully, thereby contesting an element of the crime. *See* U.S. Sentencing Guidelines

8

Manual § 3E1.1 cmt. n.2 and n.3. Therefore, the Defendants should not be given a reduction for acceptance of responsibility. *See* Doc. 97 at ¶ 64 and Doc. 99 at ¶ 65.

## III.    18 USC § 3553(a) SENTENCING FACTORS

The Court must consider the § 3553(a) factors in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. The Court must also avoid unwarranted sentencing disparities. The need for the sentence to reflect the seriousness of the offense, the nature and circumstances of the offense, the need to promote respect for the law, and to afford adequate deterrence, both specific and general, support a 27-months sentence.

### A.    Seriousness of the Offense, Nature and Circumstances of the Offense, and the Need to Promote Respect for the Law

Brasser and Gentner's repeated and deliberate criminal conduct caused a tax loss of more than $1 million and merits a guideline sentence of 27 months of imprisonment. The only motive to commit this crime was greed and self-interest, and they continued to flaunt the law despite the IRS and other professionals reminding them of their legal obligations. While the tax loss figure alone demands a significant sentence of imprisonment it does not tell the full story of Brasser and Gentner's criminal conduct. As early as 2013 the Defendants knew trust fund taxes had been withheld from their employees' wages, they knew they were required to pay over those taxes to the IRS, they knew of the consequences for failing to do so, and they chose not to pay over those taxes, even flaunting their filing and payment obligations while attempting to comply with the Voluntary Disclosure program.

Brasser and Genter, like most tax cheats, were motivated by greed. The Defendants defied the tax laws, expanding their business, hiring more employees, increasing overhead and paying their salaries at the expense of their legal obligations. Americans can spend *their* money as they see fit, including on business ventures. However, they cannot steal *other people's* money—in this

9

case their employees' payroll taxes—to prop up their otherwise failing business ventures. *See Davis v. United States*, 961 F.2d 867 (9th Cir. 1992) (affirming conviction in which "The federal government is in effect subsidizing the corporation's recovery by foregoing collectible tax dollars."); *Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987) (per curiam) ("The government cannot be made an unwilling partner in a business experiencing financial difficulties."); *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir. 1979) ("The United States may not be made an unwilling joint venturer in the corporate enterprise.").

The Defendants' argument that this case did not involve their lining their own pockets is unsupported by the evidence and misses the mark, but also highlights their lack of remorse and the need for specific deterrence. *See* Doc. 110 at p. 3. Brasser and Gentner paid themselves salaries of almost $1 million total in 2015 and 2016. Their salaries alone provided sufficient funds to pay the unpaid taxes, especially in light of Greg Brown's warning and advice to forgo salary. Instead they selfishly continued paying themselves instead of paying the taxes and used the withheld funds to support their business venture.

There is nothing in the statute that inserts a prerequisite that the Defendant spend the unpaid taxes on luxury items. This is because "once withheld from employees' paychecks, the taxes constitute a special fund held in trust for the United States." *Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987) (per curiam); s*ee also* I.R.C. § 7501; *Roth v. United States*, 779 F.2d 1567, 1572 (11th Cir. 1986). Brasser and Gentner were stealing their employees' taxes to prop up a business experiencing financial difficulties. "Using [the taxes] instead to finance the corporation not only increases the risk that the corporation will be unable to remit the taxes when due, but constitutes **flagrant violation of the law**. Taxpayer's expectation that sufficient funds would be available at the end of the tax quarter does not make his behavior any less willful." *Id*. (emphasis

added).

The Sentencing Commission has recognized that "[t]ax offenses, in and of themselves, are serious offenses." § 2T1.1 cmt. background. In addition to being a serious offense, paying over withheld trust fund taxes is one of the most basic responsibilities an employer has to the government. It is also a simple responsibility; it does not involve a complex set of IRS regulations. Unfortunately, because of this simplicity, not paying employment taxes is an easy crime to commit and provides employers with access to funds that are simply not the employers to do with as they please. The tax laws do not permit an employer to choose to use the monies held in trust for the United States for other purposes, such as to pay business expenses.

Moreover, tax offenses are not victimless crimes. When a business owner fails to pay their employment taxes, they victimize other parties and directly impact the ability of the government to fund a variety of goods, programs, and services to support the American public and pay interest on government debt. 87% of the total revenue collected by the United States comes from employment taxes. In fiscal year 2025, to date, individual income taxes accounted for 52% of total revenue and Social Security and Medicare taxes made up another 35%. *See* https://fiscaldata.treasury.gov/americas-finance-guide/government-revenue/.

Once the payroll taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual tax liabilities, regardless of whether such taxes are actually paid to the United States. 26 U.S.C. § 31(a); 26 C.F.R. § 1.31(a); *Slodov v. United States*, 436 U.S. 238, 243 (1978). Thus, the United States suffers a double loss, in that it does not receive the payroll taxes that lawfully belong to the government, and in that it affirmatively pays the Social Security, etc. contributions for the employees for the delinquent periods.

While Brasser and Gentner were acquitted of filing false tax returns, their own 2015 and 2016 Forms 1040 are illustrative of this point. Both Defendants claimed on their Forms 1040 taxes purportedly withheld and paid over to the IRS, taxes they knew had not been paid over to the IRS. Because the IRS credited Brasser and Gentner with funds that were never paid in, they benefitted in the form of a refund or a significant reduction in the amount owed from funds the IRS never received.

As noted by the Treasury Inspector General for Tax Administration in a report addressing the need to more effectively address employment tax crimes, "[e]mployment tax embezzlement is an especially egregious crime because the employer . . . violates their fiduciary responsibility to remit the taxes on behalf of their employees." *A More Focused Strategy Is Needed to Effectively Address Egregious Employment Tax Crimes*, March 21, 2017, Ref. No. 2017-IE-R004, p. 3. The report stated further that "[w]hen employers willfully fail to account for and deposit employment taxes which they are holding in trust on behalf of the Federal Government, they are in effect stealing from the Government." *Id*. at p. 4.

B. <u>Need to Afford Adequate Specific and General Deterrence to Criminal Conduct</u>

One of the paramount factors the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Criminal tax prosecutions serve not only to punish the violators, but also to promote general deterrence and encourage all taxpayers to abide by the rules and pay their fair share of taxes. A meaningful term of imprisonment—that is, within the Guidelines range—is essential to achieve the goals of general

and specific deterrence and to send a message about the corrosive effect that tax fraud has on our society. 18 U.S.C. § 3553(a)(2)(B).

Employment taxes are a tempting source of funds for small business owners like the Defendants – Brasser and Gentner's attitude was "the IRS will get paid eventually." Except, these withheld funds are to be held in trust by the employer and not used for their own wants and needs. It is tantamount to theft, and it is important that the sentence reflect the importance of paying over these withheld taxes to the IRS. Further, all employers in this country are required to pay employment taxes, so sentences in cases such as the present case have a wide-reaching effect. Thus, the Defendants' sentences should be firm in order to promote deterrence among employers nationwide. A probationary sentence is anti-deterrent.

General deterrence is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. The United States tax system relies on voluntary compliance. *See United States* v. *Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system"). The IRS's most recent study of tax compliance estimates that only 85% of individuals are compliant, leaving a yearly tax gap of $496 billion in unreported and uncollected taxes.[2] The underreporting tax gap for employer FICA and FUTA taxes is estimated to be $29 billion, which represents 6% of the total tax gap.[3]

The Fourth Circuit has explicitly endorsed the vital importance of incarcerating tax scofflaws as a means of general deterrence:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of

---

[2] *Tax Gap Estimates for Tax Years 2014-2016*, Publication 1415 (Rev. 10-2022), *available at* https://www.irs.gov/newsroom/the-tax-gap.
[3] *Id*.

13

such crimes go unpunished, if not undetected. <u>Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.</u>

*United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) (emphasis added).

In sum, the Government cannot ensure compliance with the Internal Revenue Code if the general public believes there are no meaningful repercussions for failing to comply with tax laws and regulations. Sentencing Brasser and Gentner to a significant term of incarceration will convey the message to others that systematic and repeated failure to pay payroll taxes will be met with harsh punishment.

### C. <u>A Guidelines Sentence Avoids Unwarranted Sentencing Disparities</u>

Finally, a within guidelines sentence of 27 months avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Within the past year, two defendants in this District were sentenced to prison for violations of 26 U.S.C. § 7202. In *United States v. Peter Thomas* (December 2024), Thomas pleaded guilty to one count of § 7202 and admitted to a tax loss of more than $2.5 million. Thomas similarly had years of non-compliance and collection action by the IRS. He used the unpaid taxes on personal expenditures, but most of the unpaid funds went to expand his other business ventures. Judge Bell sentenced Thomas to 18 months in prison. In *United States v. James Christopher Robinson* (July 2024), Robinson pleaded guilty to one count of § 7202 and one count of access device fraud, in violation of 18 U.S.C. §1028(a). Robinson failed to pay over more than $3.1 million in employment taxes and was sentenced to 30 months in prison.

In *United States v. Shane Mike* (NDCA, December 2024), Mike pleaded guilty to failing to pay over more than $1 million in employment taxes and was sentenced to a year and a day in prison. In *United States v. George Taylor, Jr.* (EDNC, November 2024), following a guilty plea

14

where Taylor, Jr. acknowledged a tax loss of $2.2 million, he was sentenced to a year and a day in prison. Taylor, Jr. similarly kept the employment taxes for himself and his business ventures. In *United States v. Gail Jones* (EDVA, June 2024), Jones was sentenced to 15 months in prison after pleading guilty. The tax loss in this case was $950,000. Timothy Meade was sentenced to 30 months in prison following a guilty plea where the tax loss was $971,000. *United States v. Timothy Meade* (MDFL, May 2024). A within guideline sentence of 27 months following a trial, is consistent with other similarly situated defendants. A sentence of probation or home confinement, as requested by the Defendants, would itself be disparate and not achieve the goals of sentencing.

And, the Defendants cite to *United States v. Tenzer*, a case involving a voluntary disclosure. Tenzer pleaded guilty to several misdemeanor counts of failing to file individual tax returns, in violation of 26 U.S.C. § 7203. Following the multiple appeals, and a motion for a downward departure based on the voluntary disclosure, Tenzer was sentenced to a year and a day in prison. So, other defendants who were similarly prosecuted following a voluntary disclosure submission have received terms of imprisonment.

### iV. CONCLUSION

For years, the Defendants undermined the U.S. tax system and kept for themselves and their business over $1 million in employment taxes. This serious crime deserves serious punishment. Therefore, the United States respectfully recommends that this Court sentence the Defendants to a within-Guidelines sentence of 27 months in prison and a three-year term of supervised release. Such a sentence is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED, this the 21st day of February, 2025.

LAWRENCE J. CAMERON
ACTING UNITED STATES ATTORNEY

/s/ CARYN FINLEY
CARYN FINLEY
Assistant United States Attorney
New York Bar Number: 3953882
caryn.finley@usdoj.gov

s/ ERIC A. FRICK
ERIC A. FRICK
Special Assistant United States Attorney
North Carolina Bar Number: 49212
eric.frick@usdoj.gov

Attorneys for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, NC 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)

<u>CERTIFICATION</u>

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 21st day of February, 2025.

s/ Caryn Finley<br>
Assistant United States Attorney